I'll give you a moment to get settled. Mr. Heck, when you're ready, you may state your appearance. Good morning, Your Honor. Let me adjust this. My name is David Heck. I represent Kyle Hanagami. I'm going to reserve three minutes for my rebuttal. The issue before the court involves protecting an artist's creative, original work from the advances of technology. This is a theme that's particularly relevant given the ongoing writer's strike today. Under the district court precedent, no infringement of choreography could ever occur in short-form media like TikTok, YouTube shorts, and the like, which last seconds, not minutes, but nonetheless are extremely valuable to creators and to large companies. No other court has ever granted a motion to dismiss in a case involving infringement of choreography on grounds related to the substantial similarity test. Choreography is still a very new area to the law. There's not much precedent. Here, the district court got it wrong for at least three reasons. First, it misapplied the substantial similarity test. It ignored protectable elements, and it basically focused in on what it called ten poses. This is the sort of note-by-note comparison that this court expressly denounced in Swirsky. There are more elements than simply the frames of motion or the spatial relationship of the body in certain poses. For example, rhythmic elements. These are right in the copyright office's definition and definitions that have been recognized in this court, for example, in Bikram, where the court recognized that choreography involves dance movements and patterns where dance is described as static and kinetic successions of bodily movement in certain rhythmic and spatial relationships. There was only a focus on the spatial relationships. And that's not all the elements that should have been considered. There's also speed, dynamics, transition. These are terms of art that are somewhat similar to music but exist in the field of choreography, which really no court has looked at in detail. All this boils down to in the district court's mind was the ten poses, poses that the court found to be unprotectable. The district court, it seems to me, tried to do more than that. I mean, it started out with the right body of case law. It tried to filter out the elements that are unprotectable. It looked to guidance from the copyright compendium. It talked about short dances like the floss not being protectable, motioning USA during choreography. So it did really seem to engage. Can you specifically identify where the error was given that the district court kind of proceeded step by step through the analysis that we suggested as guidance in our case law? There's no doubt that the district court tried to figure out what was going on. It says that it looked at the works, but the problem was that it disregarded all these other elements, including rhythm. The elements that have come up time and time again in different cases, including the Williams v. Gay case, Swarsky. These are cases, again, the closest analogy we have to choreography because of that rhythm aspect and other aspects of the work. Frankly, that none of us have the vocabulary unless there's someone in our presence that is a choreography expert. But this is, again, the realm of the expert. And this is why I think the court tried, but this was very, very premature to dive into a frame-by-frame type analysis without regard for what this hook meant. Because this is really the hook that mattered. And, again, Swarsky is a very, very helpful case here because, like Swarsky, the hook here is a chorus.  So the court tried to view this under the prism of almost static art, and that was not the right analysis. Tried to look at sort of the inverse of Bikram. In Bikram, you had 26 poses that were being sought to be protected as choreography, and that wasn't right. This is sort of the inverse, boiling down what was infringed into these various poses. But that, again, is not enough because it's missing the rest of the analysis. And so what really would have happened or should have happened is that the court could have gotten more guidance. Now, to your point on the copyright office, I'm glad you brought that up because there are several reasons why that must fail. The first is none of the works that have been brought up anywhere in the record here are anything like – there's not a single movement that is similar to this. So I'll go kind of point by point. The Carlton, for example, was rejected for being a simple dance. But the office there – and this is in the record at ER 148 to 149 – the office there said there were three movements. Here, the court said there were ten. And before I forget, I do want to make it very clear that courts – this court has actually said in two instances, at least, that having an eighth note – the court has said in gray that a melody with eight notes may be protectable. And it rejected a challenge – this was in Swirsky – as to the protectability of the first measure of a seven-note chorus. So here, I would say – and the analogy of a note is not a movement. A movement is more like a chord because it is so – it's so complicated. And, again, we're going to make light of the title of Epic's infringing work, which is called It's Complicated. In each pose, there is a lot going on. There is movement of the legs, the arms, the elbows. And we actually took some time – So what you're asking for is for us to vacate and send it back for the district court to consider all the other dynamic elements that you say the district court failed to consider the first time around? I would say yes, but I think it's premature to do any analysis. I think this needs to go – there needs to be expert discovery. We need to get into discovery to understand – and this is another big point – what are the building blocks? This was something that it wasn't so clear in the district court's opinion as to whether he was considering this particular hook as a building block itself, which seems very odd because nobody's ever seen this particular movement or series of movements anywhere before, right? It's completely original. How could it be a building block? And the other point I want to make is even though there's a lot that's been made by this lower court on the length of the movement – again, it's a chord, so it repeats – and I think that it is not – the analysis is not to calculate a percentage of how much of the overall work was taken because it does go to the heart of the work. It is the hook. It is the chorus analogy. But here you have really a dearth of knowledge because the Copyright Office – and I was going through each particular one, and they're all different movements, and they're all less than – well, there's another issue of – actually, one thing I wanted to bring up. In terms of deference to the Copyright Office – and again, this goes back to the Carlton – one thing that I actually could submit to you in a 28J letter is the Carlton was rejected for this idea that it was a simple dance. We resubmitted another specimen that was actually an instructional video for a dance mob. There, the Carlton was rejected for being a social dance. That's in a completely different case number. That case is still on appeal. It's been on appeal for years because the Copyright Office doesn't know what to do, and that's where we are in terms of this body of the law. People don't know what to do, and so there's a lot of analogies being made on the other side of the aisle by my distinguished colleagues here about how we can compare this. There's tons of case law about screenplays. Those elements are much easier to dissect. Screen themes, cenefer. Do we look to the music? I think this court could look directly at Swirsky, and Swirsky says there's some really helpful language there because the analogy is so abundantly clear. Here it said, this is page 847 of Swirsky, the objective analysis of music under the extrinsic test cannot mean that a court may simply compare the numerical representations of pitch sequences and the visual representation of notes to determine that two choruses are not substantially similar without regard to the other elements. Then it goes on to talk about those other elements. For example, and these are overlapping elements, this is 848, to disregard chord progression, key, tempo, which we have in dance, rhythm, and genre is to ignore the fact that a substantial similarity can be found in a combination of elements, even if those elements are individually unprotected. I have a two-part, I guess, question for you. First, what's your view on whether the Copyright Office would have registered a copyright for the two second dance steps alone? And second, in your view, is that a proper question to ask or should we not be considering that? I don't think it should be considered, but I think if we were to submit this under this court's guidance, as I said in gray about the melody of eight notes or the first measure of a seven-note chorus, I think when you compare how much it could be protectable, first of all, I think that it is not necessary to re-register portions of a work if you wanted to protect those aspects of the work. They're built in, and that's the whole point of taking away the unprotectable elements in the extrinsic test to sort of wither away and focus in on what's protectable. But this is the hook. We would say the hook is protectable under the law. Go ahead. Another question. It seems like EPIC basically thinks that you are asking for a loophole around the legal concept that individual dance steps and simple dance routines are uncopyrightable, that a plaintiff can just insert the uncopyrightable movement into a larger work, register that work, and then sue for infringement based solely on the simple movement alone. That is not what happened here. We're not here to talk about other cases. Again, this area of the law is really new and still being explored. But in terms of this, there couldn't be a better example of a hook that, in the court's words, is composed of ten poses. There's some argument about that. Again, this is really the purview of experts to determine. But if you look at any of those poses, they are so complicated. Actually, just to humor you, if you look at ER 15, picture five, we actually tried our best to describe in words what is being pictured there. Now, this is problematic because there are other aspects like the transition between these various poses. But just reading how we would describe that. With the weight on the left foot, the foot is turned 30 degrees to the left diagonal with the left heel on the floor. Right foot tapes down to the floor with the right heel lifted and both knees bent. Hips rotated 45 degrees to the left corner. Right elbow drops to 60 degrees. Right hand drops from the right shoulder to the right bicep, where the left hand lifts up from the down position to grab the left shoulder, bringing left elbow up to 90 degrees out to the side. Both hands are open and cupped. There is no way that is a building block. This is not a loophole. This case is about choreography that was taken because it was valuable. It was recognizable. I just have one question for you. How should we, or how should one, I don't know who it is, define choreography? I don't disagree with the definition that exists. I think there might be more to it. Where does it exist? In Bikram. Bikram relies on, and I believe it's in other cases. I think Horgan also has something very similar. Horgan's a Second Circuit case, though. But the Bikram case says, and I read it, choreography involves dance movements and patterns where dances describe the static and kinetic succession of bodily movement. I just described a whole bunch of aspects of the body, hips and hands and arms, in certain rhythmic and spatial relationships. I think that language is key. Spatial is what the court focused on. Rhythmic is the rest. And then I do think there's more because there's speed dynamics, which is how quick each move happens, and then the transition between various movements. So here, even though we're looking at an infringement that's rather short, it packs a punch. I mean, you have 24 frames per second in each frame, and there's a lot of movement, a lot of aspects of the body that are moved. These are not building blocks, and nobody has established that they're building blocks. And any of the comparisons to the various Copyright Office guidance is really not guidance at all because it doesn't talk about any similarity in building blocks. It at best talks about the length of, for example, the floss. Let me ask you, you keep talking about experts. Are we to the point where just about any copyright case has to have an expert? I don't think so. What's unique about this situation? What's unique here is that on a motion to dismiss, the court just made a very conclusory observation, really without going into what was required again under Swirsky, about this really has to be like a surgical procedure. We need to take apart and figure out how this all works together. That's not what was done. I think there was an attempt, no doubt, but they didn't have the tools. And so there was no guidance. And so I don't think in every case, I think that's the whole point of the extrinsic test, where the extrinsic test is supposed to take away the cases where they're so obvious, where these are building blocks, right, where this is something that shouldn't be a copyright infringement case. This is not that case. This case should absolutely proceed. Do you want to reserve your time? Yeah, I thought I reserved 30 minutes. I mean, 3 minutes. Well, you did, but you ran through them. Oh, I'm sorry. I'll reserve. Okay. Forgive me. Good morning, Your Honors, and may it please the Court. Dale Sindaly, Counsel for Epic Games. This case is about the legal distinction between choreographic works, which can be copyrightable, and simple dance routines, which are never copyrightable. Affirmance here is warranted, as plaintiff's two seconds of steps are not a choreographic work. Rather, at best, they are a simple routine. Congress made clear that simple routines are not choreographic works, and neither the Copyright Office nor any court has found a routine like this to be copyrightable, and for good reason. Unlike other types of works prior to 1976, choreography was only copyrightable if it was part of a long-form dramatic work that told a story, like Swan Lake. In 76, Congress slightly modified or opened the door to permit long-form abstract works that weren't part of a dramatic work. Counsel, let me ask you this, because this is a motion to dismiss stage, and the district court, in its order, acknowledged that, I'm looking at ER 9 here, to a degree plaintiff's steps here involve more creativity than basic waltz, the hustle and the second position of a classical ballet. So there's that acknowledgement, but then the district court went on to say that the plaintiff's steps resembled the floss, the Carlton, and other examples in the copyright compendium. So he basically really judged, as a matter of law, where the choreography here falls within the floss, the Carlton, and then the basic waltz step. Is that something that's appropriate to determine at this stage? I mean, I don't have a background in dance. This looks pretty complicated to me, and, of course, counsel did argue that this choreography here involved more than just static poses. There's a transition, the position of the body, the timing, the movement, and that we need an expert in a case like this to figure out where in that spectrum that the district court talked about this choreography should fall. How do you respond to that? I think there were several questions in that. Let me respond to it, Your Honor. One is it doesn't matter how complicated or involved. There's no need for an expert here. And the reason is the Copyright Office compendium made clear repeatedly that short routines are not protectable even if the routine is novel or distinctive. The Copyright Office went on, and that's compendium 805.5a. The Copyright Office in the compendium went on to say even if they contain a substantial amount of original creative expression, they would still not be protectable. This was language noted in the Floss and Carlton decisions. That's compendium 805.5b. And the reason for it is that Congress was making a decision here and choreography is different. Choreographic work is different from music or other works which they try to use because they realize that none of the choreography cases are helpful to them. So you would not compare it to music, even though we don't have a large body of law here. So what do we look at? Well, I think you look at it. I wouldn't compare it to music, although I have two points on that. One is directionally, musical works, and Gravy Hudson helps show that too. It says even if you have a short sequence like an 8-second sequence there, the court said even if it were novel and distinctive, it still would not rise to the level of protection. We know that words and short phrases of literary works aren't protectable. So this concept of things being too short to be protectable because that would deprive others of being able to use them is built into the law. But the difference is, and going back to Judge Wynn's comment too, is that we're dealing with, and I commend to the court the Copyright Office's decision in the electric slide case that talked a lot about the legislative history and how the Copyright Office chose the term choreographic work as opposed to other terms it could have chosen like dance. Choreographic work is well established. It's said in the compendium it's just a subset of dance. So what the Copyright Office was saying, Your Honor, is that when you have a choreographic work, Congress chose to only protect that. And that's why it's a different statutory language. How do you define choreographic or choreography? Well, as we know, as we explained in the briefs, Congress just said simple pantomimes or choreographic works. It didn't define in 101 what... How would you define it? Well, I would use the Copyright Office compendium definition, which defines it as choreography is the composition and arrangement of related series of dance movements and patterns organized into a coherent whole. That's at 805.1. But dance is really a subset of choreography.  You just said choreography was a subset of dance. Then what I was trying to say is that there's the universe of dance and it's well established expressly in the compendium that choreography is a subset of dance, and that's also explained in the electric slide case. Let me ask you this. So we tried to give choreography some meaning in Bikram. Counselor just read what we said. What's wrong with that? Well, because the point is we're not dealing with choreography here. What we're dealing with is this is a simple routine. There's no question that the... I mean, I know you keep saying this is just a simple routine. Now let me ask you this. When you say simple routine, does that mean that, you know, I'm a 76-year-old, I can get out there, and I could do this simple routine? No, we're not... What does it mean when you say simple routine? Well, what a simple routine is, we look to what Congress said was to not be included. They said social dances and simple routines were not to be included under the definition of a choreographic work. Well, how do I know that this is a simple routine? Okay, and so what else did the compendium say? The compendium also said and gave express examples cited in the Copyright Office decisions that a discrete number in a variety show would not qualify, an entire number in a dance contest would not qualify, or similar exhibitions. This is far less than that. We're talking about two seconds. So because it's only just it's less, two seconds, I should be able to get out there and do this simple routine? Because whether you can get out there or I could get out there and do those two seconds doesn't matter. What matters is under the parameters set by the Copyright Office as to what a simple routine is, the Copyright Office deals with both short and simple routines, and the Copyright Office... But what if we don't think this is simple? It's short, but what if we don't think it's simple? Well, because the Copyright Office uses both terms, and the Copyright Office specifically states that individual dance steps and short dance routines are the building blocks of choreographic expression, and allowing copyright protection for these elements would impede rather than foster creative expression. Compendium 805.5a. And that's what this is like, about, because what they're trying to do is radically change expectations and expectations with regard to... Let me ask you this, as counsel argued. So when you look at the Epic Games, this copy in Epic Games, and it looks pretty similar. I'm no expert. It looks pretty similar. Those moves by the... What are they called? Emote. Emote, by the emote. I mean, you know, I don't... I'm not a game player, so... That's fish stick in the emote. I understand that. And then you look at the dance, right? Those movements, or the protected choreography scheme, repeat throughout. I mean, counsel argued that they were sort of essential or core to it. Does that make any difference here? It doesn't make a difference here, because you still need to, under the extrinsic test, look to whether the two seconds of an issue that they're saying was copied is protectable, which is... One of your honors asked the question, I think it was the chief, as to whether it's relevant, whether the Copyright Office would have registered these two seconds. Yes, that's directly relevant, and there's nothing in the Copyright Office's prior decisions regarding much more complicated and long works, like the really complicated and beautiful Palabola's 16-second routine. If they rejected that, if they rejected the floss, if they rejected the floss, if they rejected the ode to the end zone, this is far on the continuum to the side of that. So where is their basis to say that this would be something protectable? Tellingly, neither... And the district court noted this. Neither at the district court nor before this court did they ever grapple with any of those cases, because they can't, which is why they try to pivot to music or other kinds of analogies. Why wouldn't we look to music? Well, music is helpful, like literary works, in the sense that, again, Gravy Hudson exemplifies this, as we cited, is that it also has this concept of you shouldn't deprive others, take from the public domain these short things. But the reason not that music doesn't help, ultimately, is that it's not using the same statutory language of a choreographic work, which goes back... And because of that, you need to look specifically. It has that other thing built in in the legislative history that said a choreographic work is not to include simple dance routines, and that's what this is about, is this a simple dance routine. And as we've learned, there is nothing in the legislative history, in the compendium, in the Copyright Office decisions that would ever say that this would rise to that level. And no expert would be needed. I'm not a dance expert either, Your Honor, but I can look at the guidance of these compendium cases. I can read the legislative history that says what is to apply. And what's significant is even what purpose would the expert have? Sometimes in copyright cases, an expert can be useful in deciding something seems affair or something is a common pirate trope or something like that. But this isn't that case because, as I read, the Copyright Office is clear because of the concern to make sure that copyright isn't overextended to these types of short routines. I'm sorry, Your Honor. You keep referring to Gray, and you did so in your brief as well, in which we stated that an eight-note pitch sequence is not protectable. Is that the case? That's the same case you're referring to, right? That's right. But in that case, which I believe came to us after a jury trial that we described as centering around the testimony of musical experts we elaborated that an eight-note melody may be copyrightable. Without any discovery, how are we able to determine that the dance steps are more akin to a pitch sequence than a melody? Well, two things. One, we're dealing with a different part of the copyright statute and different statutory language choreographic work, which is why the music cases and the literary works cases aren't helpful because those cases lack what is present here, which is Congress saying in the legislative history we don't want to protect simple routines. And those cases lack the 47 years of history in the compendium with regard to dance where uniformly nothing this short has ever been protectable. This would be a sea change and a radical departure for what's expected. And what I was starting to say is no expert would help because even if the expert said this is creative or this is novel, which is presumably what they would get an expert to say, for the reasons that I just read, the Copyright Office says, look, these kinds of short routines, simple routines, even if they were creative, even if they were novel, they still shouldn't be protected. But you're basing that they're simple routines, it seems like, based on that it was two seconds long. Yes, because that is. . . So something that's just two or three seconds long could never be copyrightable? That is correct, Your Honor, and it's under dance law. And I know that. . . Under dance law. . . This seems like it's an evolving area. Are you quoting the copyright compendium? Where is the law? I'm trying to figure out what the law is. Well, we're dealing with the compendium and the wisdom of the Copyright Office. We're dealing with Bikram that also at the district court said. . . I'm familiar with Bikram. I know, Your Honor, who even though this court decided it on other grounds, the district court's point of saying that those 26 yoga poses were simple and did not rise to the level of something that could be a choreographic work. And so that's maybe the only case that's really dealt at all with this issue. So what we're dealing with is 47 years of history. And I think a good analogy for Your Honors to consider is in Garcia v. Google, sitting on Bonk, this court also dealt with someone. In that case, it was with regard to someone saying my six seconds of acting performance should be protectable. And the court in Garcia specifically credited the Copyright Office's wisdom and said that the Copyright Office and expert opinion on the Copyright Office  well-reasoned position reflects a body of experience and informed judgment to which courts and litigants may properly resort to guidance. The Inhill case is similar. And that's the situation here. What they're trying to do is change. There's no doubt, they've never dealt with it, that the two steps at issue here are far to the side of any of the things that are found to have been protectable. That's true. You just boil it down to two steps. I do, Your Honor, and I know that sounds... I find that hard to believe because you look at it and, you know, there's body movement, there's arm movement, there's head movement. They're just not two steps. I mean, I could get out there and do a simple two steps. But, you know, if you ask me to move my head in a certain way or my arms in a certain way or my body in a certain way, you know, is it rhythmically and spatially? That, to me, does not seem, you know, an easy thing. Forgive me, Your Honor. I may have misspoke. I meant two seconds. We're saying that there's maybe four steps within those two seconds, but it's two seconds of four counts of a 16-count emote of which lots of other things was in that emote, which they're not claiming was infringed, set to different music, danced by one person, not a series of people. As we know, we have independent grounds for affirmances that under Apple v. Microsoft, you look at the works as a whole, and they're different. But I also think we need to go back to Rentmeester and the wisdom in Rentmeester that says, without game-setting the originality of the pose Rentmeester created, he can't copyright the pose itself and prevent others from photographing a person in that same pose. I argued Rentmeester, too, oddly enough, but it seems like this is a far worse situation, and by that I mean think about it. In this age of TikTok where anybody could go online and do their little step and their little step and their little step and claim copyright protection, even though Congress said things like short and simple routines shouldn't be protected, even though the Copyright Office says a whole number in a dance contest shouldn't be protected, then what's going to happen is everyone's going to say, oh, I own my two seconds and I own my two seconds. Let me ask you this, Counsel, because your argument really boils down to the short duration of the work here. Can there be any choreography within two seconds that's protectable? And the answer is no. And it's no under the- I don't see any support for that because the compendium says social dances and simple routines, and of course short routines can be simple or it can be really complicated. I don't see any case law guidance or in the compendium indicating that the short duration alone makes it unprotectable. So I commend to the court the Palopolis decision where they said, oh, ours is 16 seconds. You shouldn't hold that against us. And the Copyright Office said, look, I'm sorry, you may have this big complicated thing of dancers unfolding into a flower, but that still doesn't pass muster. There isn't a single decision of the Copyright Office or a court that's ever said that something this short would be protectable. And there is law in the compendium that says even if it's complex, even if it's creative, even if it has substantial expression, that isn't enough. So even if all that were true, it still wouldn't be enough. And again, the concern here is an onslaught of potential litigation. Again, you haven't seen cases over 47 years where people are saying, I need to protect this because it's been well settled. And now it would be a chilling effect of people wondering what they can use in their own creations, what they can dance at a wedding, what they can put in their own TikTok. I mean, think about it. If I wanted to, you know, tip a bowler hat and do jazz hands like Bob Fosse, is that protected? Or the lift in Dirty Dancing? Or swinging around as a lamppost or street lamp like Gene Kelly? The slippery slope here is steep. And I go back to the fact that there's nothing that is ever said that this work this short in the act, in the legislative history, in the Copyright Office, should be protectable. There's ample things that say the opposite. And I close with, because I'm aware of my time, but I close with in Sony Universal, the Supreme Court stated that there's a judiciary's reluctance to expand protection of copyright without explicit legislative guidance is a recurring theme. 464 U.S. at 431. Epic respectfully asked this court to affirm. The district court got it right in an opinion that grappled well and dealt with not just steps, by the way, by themselves or static images. The district court specifically said he saw the videos and looked at the videos. And under long-standing principles of copyright law, we believe affirmance is proper. No expert can change that. Thank you. So I let Ms. Sindali go over, so I'll let you go over. I really appreciate that. Five minutes. Thank you. I have a couple of responses, including one that I think is particularly illuminating. First, we keep feeding into this idea that really flips the test, that Epic has argued that, and my distinguished colleague just said, that the work is short. The work is not short. What was alleged to be infringed, and by the way, to your point, Judge Payas, the movement we're alleging is not just substantially similar. It's exact. The complaint alleges it's one-to-one modeled after the choreography here. So here's the rub of the whole thing. Again, we're talking about short routines, simple routines, and I think my colleague had a tendency to use them interchangeably. But think about this. The amount of movement in those couple of seconds, which really repeats, so it's not truly two seconds or whatever the infringed portion was. We have to look at the entire work and what that represents. But what if we slow it down? What if we had one of us try to perform it? It could take us a minute. What if we took the same movement, or a less skilled good performer took a minute or two, and then registered that work with all of those things, and I just read one of the movements. The sheet that I have summarizing all of them is a page long, and it's very verbose and goes into all of these different aspects. This would be like pounding on a keyboard and saying, well, that's a two-second clip because the tempo is really quick, right? But you could slow it down. And this is also why what I mentioned before, it's the rhythm, it's the tempo and speed. All of those things matter here. Can you please respond to your colleague across the aisle's comparison to Palapalos, I believe. Can you respond to that? I have not seen the work. Specifically, I read about the work, which just took a couple of lines to describe it. It is in the record. But in that case, there were 14 seconds of there what appeared to be building blocks, intertwining bodies into a flower, a giant hand pulling left to right, silhouettes. This all actually comes across more like a dramatic work, like something that you're watching unfold slowly and beautifully, right? And there, the issue was actually creative authorship. I don't think it was rejected on account of simplicity. There was another issue. And here, if we were to give any deference to anything that came out of the Copyright Office, you look at the deference of the difference between a single dance step as described, for example, in the floss, right, where that particular application was rejected. And that was summarized as the dancer sways their hips side to side while coordinating their arms to move in the opposite direction. That's what the Copyright Office guided us. This is not that. And that took the same two seconds to achieve. There's a lot more in this. And that's why I think when you unpack it, and as I said, 24 frames in a second, and you look at what it was actually taken and how many movements were there. I mean, the court said 10 poses. And to your earlier point about gray, that's exactly right. An eight-note melody may be copyrightable. And here we're saying it's not even eight notes. It would be eight chords. What about the slippery slope argument? So, you know, you go into bars across the United States and beyond, and you hear people singing to Bon Jovi, living on a prayer, right? And those words are not copyrightable, right? But the song is. And if people are dancing or if people are doing things, right, that doesn't mean that we're going around policing and taking building blocks out of song and preventing people from doing it. But it's actually the flip side. By recognizing how dense and how complicated choreography is, for the first time, we will be helping choreographers. The reason that there are not many cases is because there's not much activity in this sector. Choreographers have been called the bastard stepchildren of the arts. It is an art form that is not readily recognized. So thank goodness that it's in the 1976 Act. But here we have the chance to actually recognize, in the age of TikTok, where choreography is finally being realized as something that's more than just ballet, right, and can actually help people make money, help individuals monetize off of their skills dancing. It's very important to be able to protect that work. And at the same time, there's no good example outside of Epic where you have a company that takes movement. And this is solely about the movement. Because in the marketplace, what's being sold is not Mr. Banana Face. It's the avatar. The avatar is anything. It could be you or me. We could create a custom avatar. But what's being sold is the movement, only the movement of the character. So I would respectfully ask that this court remand this and reverse remand this case. And we appreciate it very much. Thank you. Thank you both. I really appreciate the thoughtful arguments presented here today by you, Mr. Heck, and Ms. Zendali. The case of Kyle Hanagami v. Epic Games, Inc. is submitted. That concludes our docket for this morning. So we are adjourned. And let me just say that you came from New York to Anchorage. It was greatly appreciated by the court. Thank you. Thank you very much. The presentation and the briefs were really good. Thank you very much.
judges: MURGUIA, PAEZ, NGUYEN